IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRADLE IP, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 11-1254-SLR |
| | ) |
| TEXAS INSTRUMENTS, INC., | ) |
| | ) |
| Defendant. | ) |

---

Paul E. Crawford, Esquire and Chad S.C. Stover, Esquire of Novak Druce Connolly Bove + Quigg LLP, Wilmington, Delaware. Counsel for Plaintiff. Of Counsel: Charles W. Saber, Esquire and Robert G. Gingher, Esquire of Dickstein Shapiro LLP.

Jeffrey L. Moyer, Esquire, Kelly E. Farnan, Esquire, and Jason J. Rawnsley, Esquire of Richards, Layton & Finger, P.A., Wilmington, Delaware. Counsel for Defendant. Of Counsel: Robert T. Haslam, Esquire, Anupam Sharma, Esquire, Christopher Longman, Esquire, and Jilliam Willis, Esquire of Covington & Burling LLP.

---

**MEMORANDUM OPINION**

Dated: February 13, 2013
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

On December 16, 2011, plaintiff Cradle IP, LLC ("Cradle IP") filed this patent infringement action against defendant Texas Instruments, Inc. ("TI"). In its complaint, Cradle IP alleges that certain TI Multicore Digital Signal Processes, Microprocessors, and OMAP devices ("the accused products") infringe three of Cradle IP's patents: U.S. Patent No. 6,874,049; U.S. Patent No. 6,708,259; and U.S. Patent No. 6,647,450 ("the patents-in-suit"). Pending before the court is TI's motion to transfer venue to the Northern District of Texas. (D.I. 18) The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338(a). For the reasons that follow, the motion to transfer is denied.

## II. BACKGROUND

Cradle IP was incorporated in Delaware on September 1, 2011 and is the privately held, majority-owned subsidiary of Cradle Technologies, a California corporation. The three patents-in-suit were assigned from Cradle Technologies to Cradle IP on November 10, 2011. Both Cradle Technologies and Cradle IP have their corporate headquarters and principal places of business at 82 Pioneer Way, Suite 103, Mountain View, California.

TI is incorporated in Delaware and has its headquarters and principal place of business in Dallas, Texas. According to TI, the accused products are largely designed in Texas, as well as in Massachusetts, India, and France. Documents related to technical support, marketing, sales, business management, and product line management of the accused products are housed in TI's Dallas headquarters, including

access to those documents located overseas. (D.I. 19 at 4)

## III. STANDARD OF REVIEW

Section 1404(a) of Title 28 of the United States Code grants district courts the authority to transfer venue "[f]or the convenience of parties and witnesses, in the interests of justice . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Much has been written about the legal standard for motions to transfer under 28 U.S.C. § 1404(a). *See, e.g., In re Link_A_Media Devices Corp.*, 662 F.3d 1221 (Fed. Cir. 2011); *Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995); *Helicos Biosciences Corp. v. Illumina, Inc.*, 858 F. Supp. 2d 367 (D. Del. 2012).

Referring specifically to the analytical framework described in *Helicos*, the court starts with the premise that a defendant's state of incorporation has always been "a predictable, legitimate venue for bringing suit" and that "a plaintiff, as the injured party, generally ha[s] been 'accorded [the] privilege of bringing an action where he chooses.'" 858 F. Supp. 2d at 371 (quoting *Norwood v. Kirkpatrick*, 349 U.S. 29, 31 (1955)). Indeed, the Third Circuit in *Jumara* reminds the reader that "[t]he burden of establishing the need for transfer . . . rests with the movant" and that, "in ruling on defendants' motion, the plaintiff's choice of venue should not be lightly disturbed." 55 F.3d at 879 (citation omitted).

The Third Circuit goes on to recognize that,

> [i]n ruling on § 1404(a) motions, courts have not limited their consideration to the three enumerated factors in § 1404(a) (convenience of parties, convenience of witnesses, or interests of justice), and, indeed, commentators have called on the courts

2

> to "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum."

*Id.* (citation omitted). The Court then describes some of the "many variants of the private and public interests protected by the language of § 1404(a)." *Id.*

> The private interests have included: plaintiff's forum of preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses - **but only to the extent that the witnesses may actually be unavailable for trial in one of the fora**; and the location of books and records (**similarly limited to the extent that the files could not be produced in the alternative forum**).
>
> The public interests have included: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* (citations omitted) (emphasis added).

## IV. ANALYSIS

With the above "jurisdictional guideposts" in mind, the court turns to the "difficult issue of federal comity" that transfer motions present. *E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 976 (3d Cir. 1988). Although transfer is a discretionary decision on the part of a district judge, clearly the Federal Circuit expects an analysis of all the *Jumara* factors in connection with any transfer decision issued by the court. In this regard, Cradle IP has not questioned TI's assertion that the instant law suit could have been brought in the Northern District of Texas and, therefore, that requirement shall not be

addressed further. See 28 U.S.C. § 1404(a).

### A. Choice of Forum

As noted above, a defendant's state of incorporation is a traditional and legitimate venue. Moreover, plaintiffs (as the injured parties) have historically been accorded the privilege of choosing the venue for pursuing their claims. TI argues that these customary principles "should be accorded little weight because [Cradle IP's] recent incorporation in Delaware is an artifice of litigation" and, indeed, Cradle IP is "simply a litigation vehicle for Cradle Technologies, designed to give it an anchor, however tenuous, to this District." (D.I. 19 at 7)

With respect to the characterization of Cradle IP as "simply a litigation vehicle for Cradle Technologies," many businesses and academic institutions enforce their patent rights through private companies (like Cradle IP); such a business strategy is not nefarious. The court declines to treat such non-practicing entities as anything less than holders of constitutionally protected property rights, those rights having been legitimized by the Patent & Trademark Office. Therefore, the fact that a plaintiff is characterized as a "litigation vehicle" does not detract from the weight accorded a plaintiff's choice of forum.

TI also questions the timing of Cradle IP's incorporation vis a vis commencement of the instant litigation, implying that incorporation is a "tenuous anchor" to Delaware if done in connection with a business/litigation strategy. Of course, business entities choose their situs of incorporation for varied reasons, including the ability to sue and be sued in that venue. Again, the court declines to detract from the weight accorded a plaintiff's choice of forum because of the timing of Cradle IP's formation and

4

incorporation.

TI argues generally that Cradle IP's choice of forum should be accorded little weight in this case because neither party has any "meaningful connection" to Delaware (D.I. 19 at i) and that TI's choice of forum that should instead be the preferred one because of the convenience factors discussed below. (*Id.* at 5) The court declines to elevate the convenience of TI over the choice of a "neutral" forum selected by both parties as the situs of their incorporation. Indeed, the concepts of "convenience" in an electronic age, "home turf" in an age of global economies, and "forum shopping" during the ten-year term of the patent cases pilot program are ill-fitting, if not anachronous. For all of the above stated reasons, the parties' choice of forum is, at best, neutral.

### B. Where the Claims Arise

A claim for patent infringement arises wherever someone has committed acts of infringement, to wit, "makes, uses, offers to sell, or sells any patented invention" without authority. *See generally* 35 U.S.C. § 271(a); *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360 (Fed. Cir. 1998) (an infringement claim "arises out of instances of making, using, or selling the patented invention."). There is no dispute that TI has sold the accused products in Delaware. This factor weighs against transfer.

### C. The Parties' Relative Size

The Third Circuit in *Jumara* indicated that, in evaluating the convenience of the parties, a district court should focus on the parties' relative physical and financial condition. In this case, TI clearly is larger in terms of its operations. Once again, TI

5

downplays this comparison because Cradle IP is not an operating company. Nonetheless, so long as Cradle IP has a legitimate right to enforce its constitutionally protected property rights, the court will make the comparison required under *Jumara*. This factor weighs against transfer.

### D. The Convenience of the Witnesses

As the Third Circuit in *Jumara* implicitly recognized, litigation is an inconvenient exercise. Therefore, it is not whether witnesses are inconvenienced by litigation but, rather, whether witnesses "actually may be unavailable for trial in one of the fora" that is a determinative factor in the transfer analysis. *Jumara*, 55 F.3d at 879. Setting aside the general argument that party witnesses may be inconvenienced by litigating in Delaware,[1] TI argues that virtually every potential non-party witness in this case may be unavailable in Delaware because the court cannot compel them to appear at trial. (D.I. 19 at 13-14) Given that TI relies on nothing more than speculation to suggest that any non-party witness might be critical enough to be called upon to testify at trial (and be unwilling to do so),[2] this factor weighs against transfer.

### E. Location of Books and Records

The Third Circuit in *Jumara* again advised that, while the location of books and records is a private interest that should be evaluated, it is not a determinative factor

---

[1] Depositions in the cases over which this judicial officer presides are generally taken where the deponents reside or work. There is no suggestion that this case has been an exception.

[2] With respect to trials, in the nine patent jury trials this judicial officer conducted between March 2010 and October 2011, an average of three fact witnesses per party appeared live for trial, with the average length of trial being 28 hours (with the parties often using less time than allocated, on average, 25 hours).

unless "the files c[an] not be produced in the alternative forum." *Jumara*, 55 F.3d at 879. TI has averred that the "Accused Products in this action are largely designed in the State of Texas," as well as in Massachusetts, India and France, and that "[t]he products are manufactured in Dallas and overseas." (D.I. 19 at 4) Therefore, the "[d]ocuments related to technical support, marketing, sales, business management, and product line management of the Accused Products and the departments in which they are housed are located in TI's headquarters in Dallas," with the "documents that are located overseas" being accessible from TI's Dallas-based engineering facilities. (*Id.*) TI argues that these facts militate in favor of transfer to the Northern District of Texas.

Consistent, however, with the realities of our electronic age, virtually all businesses (especially those based on advances in technology) maintain their books and records in electronic format readily available for review and use at any location.[3] There is no indication that the parties at bar conduct their businesses differently, or that they have experienced any difficulty in conducting electronic discovery; to wit, that the exchange of documents has occurred electronically, as it would whether the parties were within blocks of each other or across the country from each other or across continents. With respect to trial, in the nine patent jury trials over which this judicial officer presided between March 2010 and October 2011, an average of 87 documents were admitted per trial as exhibits by all parties, hardly a burden. This factor weighs against transfer.

### F. Practical Considerations

---

[3] As confirmed by TI, in describing its overseas records as being accessible in Texas.

7

This factor, that is, practical considerations that could make the trial easy, expeditious or inexpensive, arguably is where the "difficult issues of federal comity" most dramatically come into play, as it involves a comparison between courts of equal rank to determine their efficiencies,[4] all in the context of the parties' various business and litigation strategies.[5] Having thus set the stage, the court recognizes that trial in the Northern District of Texas would be easier and less expensive for TI. It is not evident that trial in Delaware would be easier and less expensive for Cradle IP than trial in either its or TI's "home turf." This factor weighs in favor of transfer.

### G. Relative Administrative Difficulty

Given that trial in this case has been scheduled consistent with the parties' proposals, this factor is neutral.

### H. Local Interest in Deciding Local Controversies

TI reiterates its argument that Texas has the strongest local interest in this controversy because the factual connection of this case to Texas is overwhelming. In this regard, TI maintains its principal places of business in Texas; consequently, the Texas economy may be impacted by litigation, e.g., the local economy derives benefits when trials attract visitors and/or are resolved in favor of local companies.

---

[4] Arguably, this comparison has been punctuated by the fact that this court, unlike those courts in the patent cases pilot program, manages its patent docket without the aid of patent local rules, thus allowing the judges to vary their case management procedures over time and/or from case to case.

[5] In this regard, the court does expect the corporate citizens of Delaware to make themselves available to litigate in Delaware and does not accord different treatment to patent holders based on their business and/or litigation strategies.

8

Nevertheless, and despite any implications to the contrary,[6] patent litigation does not constitute a local controversy in most cases. Patent cases implicate constitutionally protected property rights. The resolution of patent cases is governed by federal law reviewed by a court of appeals of national (as opposed to regional) stature. Moreover, to characterize patent litigation as "local" undermines the appearance of neutrality that federal courts were established to provide and flies in the face of the national (if not global) markets that are affected by the outcome of these cases. Therefore, this factor is neutral.

### I. Remaining *Jumara* Public Interest Factors

The remaining *Jumara* public interest factors - the enforceability of a judgment, the public policies of the fora, and the familiarity of the judge with state law - are neutral.

## V. CONCLUSION

TI has the burden of persuading the court, by a preponderance of the evidence, that the *Jumara* factors warrant transfer. TI has not tipped the scales of justice in favor of transfer and, therefore, its motion is denied. An appropriate order shall issue.

---

[6] *See, e.g., In re Link_A_Media*, 662 F.3d at 1224 (in discussing *Jumara's* public interest factors, the Court emphasized that the forum should have "ties" to the dispute or to the parties aside from being the state of incorporation).