## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRADLE IP LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 11-1254-SLR |
| | ) |
| TEXAS INSTRUMENTS, INC., | ) |
| | ) |
| Defendant. | ) |

### MEMORANDUM ORDER

At Wilmington this 29th day of April 2013, having reviewed non-party Nokia

Siemens Networks US LLC's ("NSN US's") motion to quash (D.I. 146) and plaintiff

Cradle IP LLC's ("Cradle's") cross-motion to compel (D.I. 163);

IT IS ORDERED that, for the following reasons, NSN US's motion is denied in

part, and Cradle's motion is granted in part:

1. **Background.** Cradle filed the instant action against Texas Instruments, Inc.

("TI") on December 16, 2011, accusing a number of TI's microprocessor chips (the

"accused devices") of infringing United States Patent Nos. 6,647,450; 6,874,049; and

6,708,259. (D.I. 1) NSN US is not a party to the action, but Cradle has served a

subpoena on it seeking documents and a deposition related to Nokia Siemens base

transceiver stations that TI has identified as incorporating certain of the accused

devices.[1] (D.I. 147, ex. 3; D.I. 167, ex. 4 at 15) Specifically, Cradle seeks information

---

[1]Cradle originally served NSN US with a subpoena on December 18, 2012 (D.I.
147, ex. 1) and subsequently served several amended subpoenas after NSN US raised
objections. (See id. at 1-2; D.I. 164 at 6) The operative subpoena is dated January 29,

by way of a deposition sufficient to identify: "any operation systems or base software" that supports Nokia-developed applications for the base transceiver stations; the "programming or use of hardware semaphores" in certain accused devices that are incorporated into the base transceiver stations; and the supply chain for the base transceiver stations. (D.I. 147, ex. 3) Cradle also requests documents that substantially mirror these topics.[2] (*Id.*)

2. Non-party NSN US, a Delaware corporation, has its principal place of business in Irving, Texas and maintains one of its offices in Bedminster, New Jersey.[3] (D.I. 148 at ¶ 2; D.I. 167, ex. 13) It argues that the subpoena is improper for requesting documents and information that are not in its possession, custody, or control. Rather, it avers, information regarding the operation of the accused devices in Nokia Siemens base transceiver stations is in the possession, custody, or control of Nokia Siemens Networks Oy ("NSN Oy"), its sister Finnish company and another non-party to the litigation.[4] (*See* D.I. 148 at ¶¶ 6-7, 9) NSN US further contends that the subpoena must be quashed because it violates the scope of the court's subpoena enforcement

2013. (D.I. 147, ex. 3)

[2]In addition, Cradle seeks documents and things concerning Cradle Technologies Inc. and Cradle IP, LLC, which NSN US has found, after inquiry, it does not have. (D.I. 147, ex. 3; D.I. 172 at ¶ 3)

[3]NSN US is a wholly owned subsidiary of Nokia Siemens Networks Holdings USA Inc., which is a subsidiary of Nokia Siemens Networks BV, a Netherlands company. (D.I. 172 at ¶ 2; D.I. 173, ex. 1 at 85)

[4]As such, NSN US avers that Cradle should seek the information it desires from NSN Oy. (*See* D.I. 147 at 5) Cradle, however, claims that seeking a subpoena on NSN Oy through the Hague Convention would be a "folly" because Finnish law would not permit discovery of NSN Oy's source code. (D.I. 177 at 5)

power.[5]  (D.I. 147 at 4-5)

3. **Standard.** Rule 45(a)(1)(A)(iii) provides that the test for production sought by a subpoena is whether the documents, information, or tangible things are in the "possession, custody, or control" of the person on whom the subpoena is served.  The court can compel a corporate entity that is deemed to be in "control" of documents to produce those documents, even if they are also in the possession and control of a non-party. *Novartis Pharm. Corp. v. Eon Labs Mfg., Inc.*, 206 F.R.D. 392, 395 (D. Del. 2002).  "Control is defined as the legal right to obtain the documents required on demand." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 233 F.R.D. 143, 145 (D. Del. 2005) (citing *Gerling Int'l Ins. Co. v. Comm'r*, 839 F.2d 131, 140 (3d Cir. 1988)).  The court has declined to apply a broader definition of "control" that would also include an inquiry into the practical ability of the subpoenaed party to obtain documents. *See id.* at 146.  Although control is often found when a parent corporation is requested to produce documents of a wholly-owned subsidiary, separate and distinct corporate identities are not readily disregarded, "except in rare circumstances justifying the application of the alter ego doctrine to pierce the corporate veil of the subsidiary." *See id.* (citing *Gerling*, 839 F.2d at 140) (declining to require a non-party subsidiary to obtain documents held by its foreign parent corporation); *see also Novartis*, 206 F.R.D. at 395 (finding no control when two corporate entities were not "so intertwined as to render meaningless their separate corporate identities").  The district court has discretion whether to quash or modify a subpoena. *See Wedgewood Vill. Pharmacy,*

---

[5]The court has also considered NSN US's other arguments for quashing the subpoena (*see* D.I. 147, 171) and found them to be unpersuasive.

3

*Inc. v. United States*, 421 F.3d 263, 268 n.5 (3d Cir. 2005); *Connaught Labs., Inc. v. SmithKline Beecham P.L.C.*, 7 F. Supp. 2d 477, 480 (D. Del. 1998).

4. **Discussion.** The bulk of the instant dispute revolves around whether NSN US has "control" over documents or information that is in the possession, custody, or control of NSN Oy.[6] *Power Integrations* is instructive on this issue. In *Power Integrations*, the court quashed a subpoena that was served on LGE-USA, a non-party American company, after finding that LGE-USA had no control over documents it would be required to obtain from LGE-Korea, its foreign parent company. LGE-USA and LGE-Korea had "little more than a vendor relationship;" LGE-USA did not utilize the information requested in the subpoena in the normal course of its business; and another entity, LGE-Alabama, was responsible for service and maintenance issues related to LGE-Korea's products. *Power Integrations*, 233 F.R.D. at 145-46. The court concluded that the corporate relationship between LGE-USA and LGE-Korea did not present the "rare circumstances" to justify disregarding the separate and distinct corporate identity of LGE-USA. *Id.* at 144-45.

5. Neither NSN US nor NSN Oy is a party to the instant litigation. They are sister corporate entities, which does not automatically permit an inference that NSN US

_____

[6]The subpoena is not facially defective. When a subpoena demands the production of documents in addition to attendance at a deposition, the subpoena may issue from the court of the district where the deposition is to take place. *See* Fed. R. Civ. P. 45(a)(2)(B) & (C); *Hallamore Corp. v. Capco Steel Corp.*, 259 F.R.D. 76, 79 & n.6 (D. Del. 2009) (noting that Rule 45(a)(2)(C) implies that when the subpoena for production of documents is attached to a subpoena for deposition, the whole subpoena may issue from the district which is appropriate for a deposition). Cradle's subpoena issued out of this District and designates Wilmington, Delaware as the location of the deposition and of the production. The parties do not dispute that service was proper.

4

controls the documents and information being sought by Cradle that are in NSN Oy's possession, custody, or control. NSN US asserts that NSN Oy is the entity that "designs and maintains the applications driver software, responsible for interacting with the microprocessors for Nokia Siemens Network base transceiver stations . . . ." (D.I. 148 at ¶ 6; D.I. 172 at ¶ 4) NSN US itself only "operates to promote, distribute and maintain equipment produced by [NSN Oy] affiliates throughout the world." (D.I. 148 at ¶ 5) It does not manufacture any products in the United States; have any need to store or modify human readable source code; or make any changes to the applications driver software in the base transceiver stations that it obtains from NSN Oy. (*Id.* at ¶ 8; D.I. 172 at ¶¶ 4-7)

6. Cradle does not dispute NSN US's contentions in this regard. Rather, it responds with allegations of NSN Oy's involvement in the development of the accused devices.[7] These allegations, however, do not relate to NSN US's legal right to obtain documents or information in the possession, custody, or control of NSN Oy; they do not even identify NSN US. Instead, they are consistent with NSN US's submission that NSN Oy is the entity from which Cradle should seek certain technical information.[8]

---

[7]Cradle contends that "Nokia Siemens" provided input on the development of the accused devices and was one of the early customers to receive some of the accused devices. (D.I. 164 at 10) (citing D.I. 167, ex. 9 at 51, 152, 159-60) Cradle also avers that certain TI documents show that NSN Oy was involved in developing the accused devices. (*Id.*) (citing D.I. 167, ex. 10 & 11)

[8]Cradle also contends that NSN US recently acquired Motorola Solutions, including WiMax base station modem products which allegedly use an accused device identified in the subpoena. (D.I. 164 at 10-11) (citing D.I. 167, exs. 14 & 15) However, the Nokia Siemens Networks group completed the divestiture of all assets and employees of Motorola Solutions' WiMAX business to NewNet Communication Technologies LLC in September 2012. (D.I. 173, exs. 2 & 3)

7. The relationship between NSN US and NSN Oy is factually similar to that between LGE-USA and LGE-Korea in *Power Integrations* because NSN US purchases the Nokia Siemens base station transceivers that are developed by NSN Oy, a separate and distinct corporate entity. NSN US concedes that it also "maintains" products that it obtains from NSN Oy, but that is not sufficient justification for the court to disregard the separate and distinct corporate identity of NSN US. Although I recognize the difficulty Cradle faces in pursuing discovery of NSN Oy's source code due to Finnish law, I conclude that NSN US has no control over documents or information that it would have to obtain from NSN Oy.[9]

8. Nevertheless, I am concerned with certain aspects of NSN US's motion to quash. In the first instance, Cradle's subpoena is not limited to the production of human readable source code or applications driver software; it also seeks information regarding the identify, operation, and use of certain hardware semaphores and software, as well as information about the supply chain of the Nokia Siemens base transceiver stations. Given this understanding, it is unclear from the record on motion

---

[9]Cradle points to *Afros S.P.A. v. Krauss-Maffei Corp.*, 113 F.R.D. 127, 129-30 (D. Del. 1986), in which the court compelled a wholly-owned subsidiary that was a party litigant to produce documents that were in a third party parent corporation's possession because the companies were closely coordinated – the subsidiary's board of directors included four employees of the parent who had substantial oversight responsibility of the subsidiary; the parent company made key decisions regarding the litigation in the case; and the parent had previously provided documents at the request of the subsidiary. *Id.* at 131-32. Cradle does not allege any such overlapping corporate structure between NSN US and NSN Oy; oversight or decision-making responsibility that NSN US has with respect to NSN Oy; or stake that NSN Oy has in the instant case. Moreover, as the court noted in *Power Integrations*, rather than analyzing a non-party's motion to quash a Rule 45 subpoena, *Afros* "refer[s] to the application of Federal Rule of Civil Procedure 34(a), and thus, involve[s] the exercise of the [c]ourt's authority over a party-litigant in the first instance . . . ." *Power Integrations*, 233 F.R.D. at 146.

practice whether NSN US is in the possession, custody, or control of such documents or information – besides documents or information it would need to obtain from NSN Oy – that may be responsive to the subpoena. My concern is heightened by NSN US's self-characterized role in "maintaining" Nokia Siemens base transceiver stations and also by a non-disclosure agreement in which NSN US apparently agreed to share with other parties "know-how, techniques, designs, specifications, drawings, blueprints, tracings, diagrams, models, samples, flow charts, data, [or] computer programs" related to Nokia Siemens network equipment for purposes of testing a mobile device. (D.I. 178, ex. 1 at TI-CRAD-0870552)

9. I recognize that it is unclear whether any NSN US employee or representative within the court's territorial limits may have knowledge that is responsive to the subpoena. The scope of a court's subpoena enforcement powers is limited by Rule 45(c)(3)(A)(ii), which provides that a subpoena requiring "a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person" must be quashed or modified. NSN US avers that no potential witnesses with knowledge of the information sought by Cradle reside or work in Delaware and that no NSN US employee has possession, custody, or control of applications driver software.[10] (D.I. 148 at ¶¶ 4, 7) These averments leave open the possibility that there are NSN US employees or

---

[10]NSN US attempts to broadly claim that no NSN US employee anywhere in the United States has any relevant knowledge. (D.I. 171 at 11) However, the declaration that it cites in support of that contention only states that none of its employees have possession, custody, or control of applications driver software, which is just one type of responsive information. (D.I. 148 at ¶ 7)

representatives outside of Delaware, but still within the territorial limits of Rule 45(b)(2), who may have information that is responsive to the subpoena. For instance, NSN US does not dispute that its New Jersey office is within 100 miles of this court (D.I. 164 at 8); NSN US only asserts that the office is a sales and support location, not a design location. (D.I. 171 at 11) Even if NSN US's employees in New Jersey do not design the Nokia Siemens base transceiver stations or possess applications driver software, NSN US has not foreclosed the possibility that they may have other information or documents that are responsive to Cradle's subpoena.[11]

10. **Conclusion.** For the foregoing reasons, I grant Cradle's motion to compel as follows: To the extent NSN US has an employee or representative who has knowledge of the topics identified in the subpoena; does not need to obtain documents or information from NSN Oy for such knowledge; and lives, works, or regularly transacts business within 100 miles of the designated place of deposition, NSN US shall produce such employee or representative, prepared to testify regarding the information sought in the subpoena. As the production subpoena is attached to the subpoena for a deposition, the deposition witness is also directed to bring responsive documents that

---

[11]NSN US avers that "documents related to the operation and products of NSN US are not located in Delaware" and that its agent for service of process in Delaware "does not have any control over any documents or business records of NSN US, []or . . . any power or authority to compel any officer or employee of NSN US to testify." (D.I. 148 at ¶ 3) However, whether an agent for service of process possesses a sufficient degree of control over documents located outside of the court's territorial jurisdiction is an inquiry for judging the propriety of a production subpoena that is separate from a deposition subpoena. *See West Coast Life Ins. Co. v. Life Brokerage Partners, LLC*, Civ. No. 08-80897, 2010 WL 181088, at *2-3 (D. Del. Jan. 19, 2010); *Hallamore*, 259 F.R.D. at 79 (citing *City of St. Petersburg v. Total Containment, Inc.*, Civ. No. 06-20953, 2008 WL 1995298, at *4 (E.D. Pa. May 5, 2008)).

8

NSN US does not need to obtain from NSN Oy, even if such documents are not located within 100 miles of the place of deposition or production. *See Hay Group, Inc. v. E.B.S. Acquisition Corp.*, 360 F.3d 404, 412 (3d Cir. 2004) ("Nothing in th[e] language [of Rule 45(a)(2)] suggests that a witness who is subpoenaed to testify may not also be directed to bring documents that are not located within the territorial limits set out in Rule 45(b)(2).").

United States District Judge