IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRADLE IP, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 11-1254-SLR |
| | ) |
| TEXAS INSTRUMENTS, INC., | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM ORDER**

At Wilmington this 23rd day of May, 2013, having considered defendant Texas Instruments, Inc.'s ("TI's") motion for leave to file an amended answer and the papers submitted therewith;

IT IS ORDERED that said motion (D.I. 128) is denied, as follows:

1. **Background.** Plaintiff Cradle IP, LLC ("Cradle") filed this action against TI on December 16, 2011, accusing a number of TI's microprocessor chips and devices (the "accused devices") of infringing three patents, including United States Patent No. 6,647,450 ("the '450 patent").[1] (D.I. 1) TI filed its answer on February 6, 2012. (D.I. 12) In response to allegations related to the '450 patent, paragraph 19 of the answer states:

> 19. TI admits that it does or has made, manufactured, used, sold, or offered to sell microprocessor and OMAP devices **utilizing split transaction buses with target device command buffers (insofar as that phrase is given its common meaning and not necessarily the meaning that may be ascribed to it as a result of any claim**

---

[1] The other two patents-in-suit are United States Patent Nos. 6,874,049 and 6,708,259. (D.I. 1)

**construction)**, including devices AM389xSitara ARM Microprocessors, OMPA34xx devices, OMPA35xx devices, OMAP36xx devices, and OMAP4xxx devices if "xx" or "xxx" means a combination of numbers and letters unspecified. TI denies the remainder of the allegations contained in Paragraph 19 of the Complaint.

(D.I. 10 at ¶ 19) (emphasis added) The phrases "split transaction buses" and "target device command buffers" do not appear in any claim of the '450 patent, although the terms "split transaction global bus" and "command FIFO" do.[2]

2. On August 16, 2012, TI responded to Cradle's second set of interrogatories with a non-infringement contention that the accused OMAP devices do not perform the limitations recited in claim 22 of the '450 patent, including "a) sending a command from a master device to a split transaction global bus" or "b) placing the command in a command FIFO of a target device." (D.I. 130, ex. C at 9, 11, 13, 14, 16) On September 13, 2012, TI responded to Cradle's amended first set of interrogatories by stating, in

---

[2]Independent claim 22 of the '450 patent provides:

A method of preventing a bus in a multiprocessor computer system from being blocked comprising:

a) sending a command from a master device to a split transaction global bus;

b) placing the command in a command FIFO of a target device;

c) sending the master device an acknowledgement of command receipt;

d) releasing the split transaction global bus for use by other bus devices, where such use includes another master device issuing a command accepted by the target device while the target device is executing a previously-issued transaction; and

e) repeating steps a) - d) as necessary.

2

part, that "there are no TI products that are multi-processor systems with split-transaction bus systems where such systems have command buffers in target devices, including but not limited to split-transaction bus systems that utilize Open-Core Protocol or any protocol that requires generating an acknowledgement that commands are received." (*Id.*, ex. D at 8)

    3. TI now proposes to amend paragraph 19 of its answer to read:

> 19. TI admits that it does or has made, manufactured, used, sold, or offered to sell microprocessor and OMAP devices, including devices AM389xSitara ARM Microprocessors, OMPA34xx devices, OMPA35xx devices, OMAP36xx devices, and OMAP4xxx devices if "xx" or "xxx" means a combination of numbers and letters unspecified, **but denies that its OMAP devices utilize split transaction buses with target device command buffers**. TI denies the remainder of the allegations contained in Paragraph 19 of the Complaint.

(D.I. 128, ex. A at ¶ 19) (emphasis added) TI first contacted Cradle on December 4, 2012 with its request to amend the answer. (D.I. 130, ex. E) The parties then conferred but could not reach an agreement on TI's proposed amendment. (*See id.*, exs. F, G, H, I, J, K) TI filed the motion for leave to amend its answer on January 23, 2013. (D.I. 128)

    4. **Standard.** The Federal Rules of Civil Procedure require courts to freely give leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). The court may exercise its discretion to deny leave to amend in situations in which the moving party has delayed seeking leave and the delay "is undue, motivated by bad faith, or prejudicial to the opposing party." *Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008) (citation omitted). After a pleading deadline has passed, courts have required the movant to also satisfy the more rigorous "good cause" standard of Federal

3

Rule of Civil Procedure 16(b)(4).[3] *See, e.g., ICU Med. Inc. v. RyMed Techs., Inc.*, 674 F. Supp. 2d 574, 577-78 (D. Del. 2009); *Cordance Corp. v. Amazon.com, Inc.*, 255 F.R.D. 366, 371 (D. Del. 2009).

5. **Discussion.** TI contends that the proposed amendment will conform its answer to its interrogatory responses and ensure that Cradle cannot characterize paragraph 19 to the jury as an admission of infringement.[4] (D.I. 129 at 1-2) Cradle opposes the motion on grounds of undue delay and prejudice.[5] Specifically, it asserts that TI's delay in seeking amendment is undue because the proposed amendment contravenes the scheduling order without explanation. (D.I. 150 at 6-7) With respect to prejudice, Cradle argues that permitting the amendment would amount to allowing TI to retract an admission and would require the reopening of fact discovery. (*Id.* at 7-9)

6. **Undue delay.** TI posits that its delay would not place an unwarranted burden on the court or Cradle because it put Cradle on notice of its proposed amendment before any depositions occurred and before the close of fact discovery. (*See* D.I. 170 at 3-4) However, the consideration of undue delay "requires that [the court] focus on the movant's reasons for not amending sooner." *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001); *see also Bjorgung*, 550 F.3d at 266. TI's

---

[3]Rule 16(b)(4) provides that a scheduling order "may be modified only for good cause and with the judge's consent."

[4]The parties dispute whether Cradle would be able to use paragraph 19 of the original answer at trial as an admission of infringement. (*See* D.I. 129 at 10-11; D.I. 150 at 9-11; D.I. 170 at 9-10) As the parties recognize, however, the admissibility of a pleading has no bearing on the propriety of an amendment. (*See* D.I. 150 at 9; D.I. 170 at 10)

[5]Cradle does not assert bad faith, dilatory motive, or futility.

motion was filed on January 23, 2013, more than two months after the November 1, 2012 deadline for the amendment of pleadings as set by the scheduling order. (D.I. 16) TI asserts that it contacted Cradle on December 4, 2012 with a draft of its proposed amended answer after discovering that paragraph 19 of its original answer might be interpreted inconsistently with its discovery responses and non-infringement contentions. (D.I. 129 at 5; D.I. 130, ex. E) Although this assertion explains why TI now seeks to amend, it does not explain why TI did not seek to amend before the expiration of the deadline to amend pleadings. The proposed amendment is not based on any new evidence that has emerged during discovery. Rather, paragraph 19 relates to information that has been in TI's possession all along, and TI does not contend that the structure of the accused devices has changed since it filed the answer. (*See* D.I. 130, ex. G) Given the lack of proper justification, TI's delay is undue.

7. A finding of undue delay, without a finding of prejudice, may justify denial of a motion to amend "when the amendment is grounded on 'bad faith or dilatory motive, truly undue or unexplained delay . . . .'" *Inline Connection Corp. v. AOL Time Warner Inc.*, 237 F.R.D. 361, 369 (D. Del. 2006) (quoting *Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing of the Virgin Islands, Inc.*, 663 F.2d 419, 425 (3d Cir. 1981)). Courts in this circuit have denied motions to amend based solely on undue delay when a long delay was unexplained. *See Lorenz v. CSX Corp.*, 1 F.3d 1406 (3d Cir. 1993) (affirming denial to amend where the district court made no finding of prejudice but leave to amend was filed nearly two years after the prior amendment); *USX Corp. v. Barnhart*, 395 F.3d 161 (3d Cir. 2004) (affirming denial of leave to amend on the ground of

unreasonable delay where the movant waited more than three years to amend). Here, TI notified Cradle of its desire to amend approximately one month after the deadline and then filed its motion to amend approximately one and a half months later. Although the court finds that there is undue delay, the delay in this case does not rise to the type of unexplained "long delay" that is equivalent to bad faith. *See Rose Hall, Ltd. v. Chase Manhattan Overseas Banking Corp.*, 93 F.R.D. 858, 865 (D. Del. 1982). Therefore, the court will also determine the prejudice to Cradle if the amendment were allowed.

8. **Prejudice.** The determination of prejudice "requires that [the court] focus on the hardship to the [non-movant] if the amendment were permitted" and may include "additional discovery, cost, and preparation . . . ." *Cureton*, 252 F.3d at 273. Cradle avers that it relied on paragraph 19 of the original answer during discovery and that TI waited until the end of discovery to bring the motion. (D.I. 150 at 7-9) As a result, Cradle asserts, allowing the amendment would require it to engage in additional discovery. (*Id.*) TI counters that its proposed amendment would not be prejudicial to Cradle because its proposed amendment is consistent with its responses to Cradle's interrogatories, such that Cradle "has been on notice since at least August or September 2012 that TI's Answer is potentially inconsistent with its discovery responses." (*Id.* at 5)

9. TI relies on *Le v. City of Wilmington*, Civ. No. 08-615, 2010 WL 2754253, at *3-4 (D. Del. July 12, 2010), in which the court found no prejudice to the non-movant and granted leave to amend where the amendment "only add[ed] particularity to [an] affirmative defense." The instant case, however, is distinguishable because TI's

amendment does not merely add particularity to its pleadings; it seeks to remove a qualification in its answer such that the response becomes an outright denial. Certain prejudice to the non-moving party is inherent when a motion to amend is submitted after the deadline set forth in the scheduling order. *See Asahi Glass Co., Ltd. v. Guardian Indus. Corp.*, 276 F.R.D. 417, 420 (D. Del. 2011). Despite being notified in December 2012 of TI's desire to amend, Cradle has relied upon TI's answer and prepared its case in accordance with those pleadings. Furthermore, Cradle contends that if the amendment is allowed, "[it] would have to seek discovery of TI regarding its position, i.e., why the accused L3 interconnect found in the accused OMAP devices is not a split transaction bus . . . ." (D.I. 130, ex. H) To allow TI to change the landscape of the litigation at this late date would be prejudicial to Cradle.[6] The court recognizes TI's concerns about the conformity of its interrogatory responses with its answer but, at this juncture, the concerns would be more appropriately raised as an evidentiary issue. The court will address such issues during the course of litigation if the need arises.

10. **Rule 16(b)(4).** In addition, the court finds that TI fails to meet the good cause requirement for amendment under Federal Rule of Civil Procedure 16(b)(4). "In contrast to Rule 15(a), the good cause standard under Rule 16(b) hinges on diligence of the movant, and not on prejudice to the non-moving party." *Roquette Freres v. SPI Pharma, Inc.*, Civ. No. 06-540, 2009 WL 1444835, at *4 (D. Del. May 21, 2009). "'Good cause' exists when the [s]chedule cannot reasonably be met despite the diligence of the party seeking the extension." *ICU Med.*, 674 F. Supp. 2d at 577. TI only offers

---

[6]During briefing of this motion, fact discovery was drawing to a close and the parties were preparing expert reports. (*See* D.I. 16)

evidence of diligence after it notified Cradle on December 4, 2012 of its intention to amend the answer. (*See* D.I. 170 at 3-4; D.I. 130, exs. E, F, G, H, I, J, K) Assuming, for the sake of argument, that TI diligently sought to amend between December 4, 2012 and the filing date of this motion, TI has not offered any explanation for why it could not reasonably meet the scheduling order's November 1, 2012 deadline for amending the pleadings. The court, therefore, finds that TI has not demonstrated good cause to modify the schedule in this case.

11. **Conclusion.** For the aforementioned reasons, the court denies TI's motion for leave to file an amended answer.

                                                                            _____
                                                                               United States District Judge